UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RAFAEL BASS,

                        Plaintiff,                    Case No. 2:21-cv-235

v.                                                    Honorable Maarten Vermaat

KRIS TASKILA et al.,

                        Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has consented to the conduct of all proceedings in this case, including entry of a final judgment and all post-judgment motions by a United States magistrate judge. (ECF No. 5.)

This matter is before the Court on Plaintiff's motion to appoint counsel (ECF No. 6), Plaintiff's motion for temporary restraining order (ECF No. 8), motion for leave to proceed *in forma pauperis* (ECF Nos. 4, 7), and for review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA). The Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against all Defendants except Defendants T. Hamel and M. Whealton. The

Court will also dismiss all claims against Defendants Hamel and Whealton except Plaintiff's claim that they retaliated against Plaintiff for filing a grievance — Hamel by issuing a misconduct citation for interfering with the administration of rules, and Whealton for finding him guilty of that misconduct and imposing a sanction of 30 days loss of privileges.

<u>Discussion</u>

I.     **Factual allegations**

Plaintiff Rafael Bass is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  The events about which he complains occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan.  Plaintiff sues the following AMF personnel: Warden Kris Taskila; Deputy Warden T. Dahl; Grievance Coordinator T. Hamel; Inspector C. Cummings; Lieutenant M. Whealton; Sergeants C. Borgen,; Unknown Jurva II, and Unknown Hoover; and Corrections Officer M. Davis.

Plaintiff alleges that, on March 29, 2021, Defendant Davis approached Plaintiff's cell and said: "Bass, you okay? Are you having any problems, do you want any problems?" (Compl., ECF No. 1, PageID.4.)  Plaintiff answered that he was fine and did not want any problems.  Plaintiff contends that Davis had no logical or plausible reason to approach Plaintiff's cell or ask those questions.  The rest of Plaintiff's complaint flows from that exchange.

Moments later, Plaintiff reported the exchange to Defendant Borgen.  He told her that Davis's words made him feel unsafe and uncomfortable.  He asked Borgen to remedy the issue before it became a problem.  Borgen stated that "[i]t seems we already have a problem Bass." (*Id.*)

The next day, at about the same time of the morning, as Plaintiff entered the unit from the recreation yard, Defendant Hoover requested a shakedown from Plaintiff.  Plaintiff complied.  Plaintiff contends that the search was "aggressive" and "assaultive." (*Id.*)  Defendants

2

Borgen and Jurva witnessed the incident but did nothing.  That same day, Plaintiff filed a formal complaint "to several levels of MDOC administration (including Warden Taskila)" and a grievance.  (*Id.*, PageID.5.)  Plaintiff does not say whether his complaint centered on the conduct of Davis or Hoover, but, because the complaint identifies Defendant Jurva and he is only identified in the complaint in relation to the Hoover shakedown, the Court presumes the complaint related to the Hoover shakedown.

The following day, Defendant Hoover shook down Plaintiff again.

On April 20, 2021, Plaintiff received the grievance response.  Defendant Cummings apparently prepared the response.  Cumming represented that he had interviewed Plaintiff.  Plaintiff contends that was false because: "[Cummings] simply stopped at [my] cell-door; asked who my witnesses were, I told him and he walked away." (*Id.*)  For that reason, Plaintiff filed an "affidavit of formal complaint" with Defendant Taskila.  (*Id.*)

That day Plaintiff learned that Defendant Hamel had written a misconduct on Plaintiff for interference with the administration of rules for filing the grievance.  Defendant Jurva reviewed the misconduct with Plaintiff, which Plaintiff contends was contrary to MDOC policy because Jurva was named in the grievance.  Plaintiff filed another grievance, presumably regarding Jurva's participation in the misconduct review.

On April 22, 2021, Plaintiff received a memorandum signed by Defendant Taskila indicating that he was being put on modified access to the grievance system because of the misconduct.

On April 27, 2021, Defendant Wheaton conducted a hearing on the misconduct.  She found Plaintiff guilty and imposed a sanction of 30 days loss of privileges.  Plaintiff contends that because he lost privileges, he was not able to rehabilitate his surgically repaired shoulder.

Plaintiff reports that since the "initial incident," unnamed unit housing staff have refused to call health services for Plaintiff's chronic migraine disorder.  (*Id.*, PageID.6.)  Moreover, Defendant Hamel has denied all of Plaintiff's grievance requests.

Plaintiff claims that Defendants Taskila, Dahl, and Cummings failed to act to protect Plaintiff's safety despite their knowledge of the risks he faced.  Plaintiff claims that, by way of the grievance and disciplinary proceedings, Defendants Jurva, Wheaton, Hamel, and Dahl retaliated against Plaintiff for conduct protected by the First Amendment, violated Plaintiff's due process rights, and violated Plaintiff's Eighth Amendment rights.  Plaintiff claims that Defendants Hoover, Davis, and Borgen initiated the whole chain of events and, therefore, conspired to retaliate against Plaintiff for exercising his First Amendment rights.

Plaintiff seeks declaratory judgment, injunctive relief, and compensatory damages.

## II.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at

556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges Defendants violated his First, Eighth, and Fourteenth Amendment rights.[1]

### A. Defendant Dahl

In his complaint, Plaintiff identifies Defendant Dahl as the deputy warden at AMF and then groups him with Defendants Taskila and Cummings in conclusory fashion, alleging that the group was deliberately indifferent to his safety and violated a duty of reasonable care. (Compl., ECF No. 1, PageID.7.) Plaintiff also groups Dahl with Defendants Jurva, Wheaton, and Hamel when Plaintiff makes the conclusory allegation that the group violated Plaintiff's First, Fourteenth, and Eighth Amendment rights. (*Id.*) But Plaintiff never alleges any facts about what Dahl did or

---

[1] Plaintiff also makes passing reference to the Americans with Disabilities Act (ADA) and the Rehabilitation Act (RA). (Compl., ECF No. 1, PageID.2) ("Plaintiff also seeks an injunction and damages pursuant to the Americans with Disabilities and the Rehabilitation Act."). Plaintiff makes no further reference to either Act in his complaint and he does not allege any facts to support a claim for relief under either Act. Plaintiff has failed to state a claim for damages or injunctive relief under the ADA or the RA.

5

did not do. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff fails to even mention Defendant Dahl in the body of his complaint. His allegations fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). Therefore, Plaintiff's complaint against Defendant Dahl is properly dismissed.

### B.    Eighth Amendment

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety."  *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).  The deliberate-indifference standard includes both objective and subjective components.  *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is

incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

With that standard in mind, it is difficult to ascertain what conduct by these Defendants might amount to cruel and unusual punishment. Plaintiff alleges that Defendant Davis approached Plaintiff's cell and asked him two questions. Plaintiff claims that Davis's questioning made him feel unsafe, but there is nothing to suggest that the questions objectively demonstrated that Plaintiff's conditions of confinement posed a substantial risk of serious harm. Plaintiff's subsequent interaction with Defendant Borgen seems similarly innocuous. The facts alleged do not show any risk of harm, much less a substantial risk of serious harm. Plaintiff has, therefore, failed to allege an Eighth Amendment violation against Davis or Borgen for their conduct on March 29, 2021.

Plaintiff next reports that Defendant Hoover conducted a shakedown on two consecutive days. Plaintiff suggests that the first shakedown was aggressive and assaultive. Among unnecessary and wanton inflictions of pain that offend the Eighth Amendment are those that are "totally without penological justification." *Gregg v Georgia*, 428 U.S. 153, 183 (1976). But not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson*, 503 U.S. at 9 (holding that "[n]ot every push or

shove . . . violates a prisoner's constitutional rights" (citation omitted)).  "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'"  *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)).  Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x. 579, 582 (6th Cir. 2011).

There is an objective component and a subjective component to this type of Eighth Amendment claim as well.  *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  First, "[t]he subjective component focuses on the state of mind of the prison officials."  *Williams*, 631 F.3d at 383.  Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7.  Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'"  *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"  *Hudson*, 503 U.S. at 9–10 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)).  The objective component requires a "contextual" investigation, one that is "responsive to 'contemporary standards of decency.'"  *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).  While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred.  *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).  "When

prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Id.*

Plaintiff's description of the first shakedown as "aggressive" and "assaultive" might seem to implicate the Eighth Amendment's protection against the excessive use of force. But shakedowns are an ordinary and necessary incident of prisoner life, *Hudson v. Palmer*, 468 U.S. 517, 526–30 (1984), and a pat-down search is, by its very nature, aggressive and assaultive. Such searches are necessarily intrusive, even sexually intrusive. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court noted the following was an "apt description" of such a search: "(T)he officer must feel with sensitive fingers every portion of the prisoner's body. A thorough search must be made of the prisoner's arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet.'" *Id.* at 17 n.13 (citation omitted).

Plaintiff's description of the shakedown as aggressive or assaultive does not suffice to show that the pain inflicted was sufficiently serious to satisfy the objective component of an Eighth Amendment claim. Indeed, Plaintiff's allegations do not suggest that the shakedown caused any pain at all. Accordingly, Plaintiff's allegations regarding the first shakedown are insufficient to establish an Eighth Amendment claim. Plaintiff makes no allegations to suggest that the second shakedown, which occurred the next day, was in any way out of the ordinary.

Plaintiff's allegations also suggest that Davis's questions, Borgen's response, and Hoover's comments attendant to the shakedowns may have been harassing. Allegations of verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey*, 832 F.2d at 955. Nor do allegations of verbal harassment

10

rise to the level of unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Id.* Even the occasional or sporadic use of racial slurs, although unprofessional and reprehensible, does not rise to a level of constitutional magnitude. *See Torres v. Oakland Cnty.*, 758 F.2d 147, 152 (6th Cir. 1985).

Further, Plaintiff suggests that the other Defendants may be liable for the conduct of Davis, Borgen or Hoover.  For example, Plaintiff alleges that Defendants Borgen and Jurva were present during Hoover's first shakedown of Plaintiff but "idly watched the whole ordeal." (Compl., ECF No. 1, PageID.4.)  An officer is liable for another officer's use of excessive force where the defendant "observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring." *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex. rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). In this instance, however, because Plaintiff has failed to properly allege that Hoover's shakedown was excessively forceful, Borgen's or Jurva's idle observation of it cannot give rise to Eighth Amendment liability.

Plaintiff suggests other Defendants might also be derivatively liable for the actions of the offending officers because the other Defendants did not address the problem after Plaintiff complained about it.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Plaintiff's contention that one group of Defendants is liable for failing to stop one or more other Defendants after Plaintiff complained, fails to state an Eighth Amendment claim.

## C.  Fourteenth Amendment due process

### 1.  Grievance process

Plaintiff contends that one or more Defendants deprived Plaintiff of the process he was due in the grievance and disciplinary proceedings.  With regard to the administrative grievance process, Plaintiff complains about how Defendants handled the grievance he filed against Hoover, and he complains about how he was prevented from filing grievances by his placement on modified access status.

Plaintiff has no due process right to file a prison grievance.  The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure.  *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona*, 461

U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Plaintiff's right to petition the government is not violated by Defendant's failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only

mandates exhaustion of *available* administrative remedies.  *See* 42 U.S.C. § 1997e(a).  If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action.  *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001).

Likewise, Plaintiff's placement on modified access did not violate his rights under the First Amendment.  *See Griffin*, 563 F. App'x at 415–16 (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. at 130 n.6.  Plaintiff had other means of exercising his right to petition government for redress of grievances.  Indeed, as discussed above, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process.  *See Azeez*, 568 F. Supp. at 10.

Further, Plaintiff was not wholly denied access to the grievance process.  Placement on modified access does not prohibit an inmate from utilizing the grievance process.  *See Walker*, 128 F. App'x at 445–47; *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001).  The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances.  *See* MDOC Policy Directive (PD) 03.02.130 ¶ MM (eff. Mar. 18, 2019).  Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy.  (*Id.* at ¶¶ MM, J(3).)  As with any grievance rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process.  *Id.* ¶ I.  There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Finally, to the extent that Plaintiff complains about Defendant Hamel's failure to provide him a satisfactory response to his grievances, the First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999).

### 2. Disciplinary process

With regard to the disciplinary process, Plaintiff complains that he was denied due process in connection with the determination that he had interfered with the administration of rules. Interference with the administration of rules is a Class 2 misconduct in the MDOC prisoner discipline regime.  MDOC Policy Directive 03.03.105, Attachment B (eff. July 1, 2018).  It is considered a "minor misconduct." *Id.* at ¶ B.

A minor misconduct conviction does not implicate the Due Process Clause.  A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486–87 (1995).  The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

### D. First Amendment retaliation

As noted above, the First Amendment does not compel the government to process a grievance a certain way or to answer the grievance all all, *Apple*, 183 F.3d at 479; but it does stop

15

the government from generally prohibiting expressions that take the form of petitions for redress—

i.e., grievances—and from imposing sanctions on one who petitions for redress. *Smith v. Ark.*

*State Highway Emp., Local 1315*, 441 U.S. 463, 464 (1979).  It is for that reason that retaliation

based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See*

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First

Amendment retaliation claim, a plaintiff must establish three elements:  (1) he was engaged in

protected conduct; (2) an adverse action was taken against him that would deter a person of

ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least

in part, by the protected conduct. *Id.*

### 1.    Protected conduct

The filing of a nonfrivolous prison grievance is constitutionally protected conduct

for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032,

1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).  But the right to file

grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at

415.  "Abusive or manipulative use of a grievance system would not be protected conduct," *King*

*v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from

adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then

claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520,

525 (6th Cir. 2002).  As the Supreme Court held in *Lewis v. Casey*, 518 U.S. 343 (1996),

"[d]epriving someone of a frivolous claim . . . deprives him of nothing at all . . . ." *Id.* at 353 n.3.

It may be that Plaintiff's grievance against Hoover (and apparently others) for the

first aggressive and assaultive shakedown was frivolous; however, that is not apparent from

Plaintiff's allegations.  The MDOC policy directive regarding the grievance procedure indicates

that grievances may be submitted regarding violations of policy, MDOC Policy Directive

03.02.130, ¶ F (eff. July 9, 2007), and it is a violation of MDOC policy to treat prisoners inhumanely, MDOC Policy Directive 03.03.130 (eff. Feb. 23, 2009).  Even if Hoover's shakedown of Plaintiff did not rise to the level of an Eighth Amendment violation, it may have still violated MDOC policy regarding the humane treatment of prisoners.

But even if the grievance was not frivolous based on Plaintiff's allegations, it might still fall outside the protection of the First Amendment if it violates a legitimate prison regulation.  *Thaddeus-X*, 175 F.3d at 395 ("[If] a prisoner violates a legitimate prison regulation, he is not engaged in 'protected conduct,' and cannot proceed beyond step one.").  The charge of "Interference with the Administration of Rules" proscribes "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners . . . ."  MDOC Policy Directive 03.03.105B (eff. July 1, 2018).  The policy directive offers the following as an example:

> making false accusations of misconduct against . . . staff which results in disciplinary action being initiated against the person.  (NOTE: if written as result of a grievance, it must be shown that prisoner knew allegation was false when s/he made it and intentionally filed a false grievance.  Ordinarily, the statement of staff member refuting the claim will not be sufficient.)

*Id.*[2]  The evidence of falsity might, for example, be taken from video of the incident that prompted the grievance.  *See, e.g.*, *Hunter v. Palmer*, No. 1:17-cv-109, 2019 WL 8112492, at *4 (W.D. Mich. Nov. 26, 2019); *Medlock v. Trierweiler*, No. 1:18-cv-785, 2020 WL 2576157, at *5 (W.D. Mich. Mar. 9, 2020).  The allegations in the complaint do not establish that Plaintiff's grievance violated

---

[2] The MDOC also describes this category of misconduct in the policy directive regarding the administrative grievance process:

> With the Warden's approval, a prisoner may be issued a Class II misconduct report (e.g., Interference With Administration of Rules) if the grievant intentionally files a grievance that is investigated and determined to be unfounded that, if proven true, may have caused an employee or a prisoner to be disciplined or an employee to receive corrective action. The Class II misconduct may be elevated to a Class I misconduct only if approved by the Warden. The misconduct report shall be processed as set forth in PD 03.03.105 "Prisoner Discipline."

MDOC Policy Directive 03.02.130 ¶ M (eff. Mar. 18, 2019).

the regulation and the MDOC's determination that it did does not have preclusive effect.[3] Accordingly, the Court concludes that Plaintiff has adequately alleged protected conduct.

### 2.      Adverse action

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396.  The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Plaintiff alleges different possible adverse actions in response to his protected conduct.

Plaintiff contends that Defendants acted adversely when they put him on modified access to the grievance system. The Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben*, 887

---

[3] In *Maben*, 887 F.3d at 252, the Sixth Circuit clarified the limits of the preclusion doctrine with respect to facts determined at a prison hearing as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts." *Peterson v. Johnson*, 714 F.3d 905, 911–13 (6th Cir. 2013) (internal citation and quotation marks omitted).

*Maben*, 887 F. 3d at 259.  The *Maben* court expressly rejected the application of *Peterson* preclusion to minor misconduct proceedings in Michigan, both because the state agency was not acting in a judicial capacity and because the prisoner in such proceedings does not have an adequate opportunity to litigate the factual dispute. *Id.* at 261.

F.3d at 252; *Walker*, 128 F. App'x at 446; *Kennedy v. Tallio*, 20 F. App'x at 471.  Placement on

modified access would not deter a person of ordinary firmness from continuing to engage in

protected conduct, because modified-access status does not impair the ability to file civil rights

actions in federal court.  A plaintiff's placement on modified access to the grievance procedure

merely enables prison officials to screen a plaintiff's grievances prior to filing to determine

whether they were grievable, non-frivolous, and non-duplicative.  *See Kennedy*, 20 F. App'x at

471 (citing Mich. Dep't of Corr. Policy Directive 03.02.130(II)(PP)).

      The threat of sanctions that could flow from the Class II misconduct report and the

imposition of those sanction is of much greater consequence.  The Sixth Circuit considered

whether sanctions for a Class II misconduct could be adverse action in *Maben*:

> When deciding whether the issuance of a misconduct ticket rises to the level of an adverse action, we look to both the punishment Maben could have faced and the punishment he ultimately did face. *See Scott v. Churchill*, 377 F.3d 565, 572 (6th Cir. 2004) ("[T]he mere potential threat of disciplinary sanctions is sufficiently adverse action to support a claim of retaliation."); *Brown v. Crowley*, 312 F.3d 782, 789 (6th Cir. 2002) (looking to what the prisoner "could have been sentenced to . . . if he had been found guilty").  The sanctions that Maben faced for a Class II misconduct included: "[t]oplock (confinement to quarters), not to exceed five days . . . ."; loss of privileges for up to 30 days; assignment of extra duty; and, restitution and/or disgorgement. (Maben Br., Disciplinary Sanctions, SA21; R. 13-2, Misconduct Hearing, PageID # 67.)  The actual punishment resulting from Maben's misconduct hearing was loss of privileges for seven days.  These privileges included the rights to access exercise facilities, to attend group meetings (including Bible class), to use the telephone, to have visitors, to access the general library, and to access the activity room.

> In *Hill v. Lapin*, this Court found that "actions that result in more restrictions and fewer privileges for prisoners are considered adverse."  630 F.3d 468, 474 (6th Cir. 2010).

*   *   *

> In all, the deprivation of privileges is hardly "inconsequential"—indeed, they are all that prisoners really have.  Furthermore, the issuance of the minor misconduct ticket subjected Maben to the risk of even more significant sanctions, including confinement to his cell, which is certainly not "inconsequential."  *See Hill*, 630 F.3d at 474.  Because this case did not involve *de minimis* retaliatory

action, this question cannot be resolved as a matter of law.  It is for the factfinder
to decide whether the deprivation of those privileges "poses a sufficient deterrent
threat to be actionable."  *Bell*, 308 F.3d at 603.

*Maben*, 887 F.3d at 266–67.  Accordingly, the Court concludes that Plaintiff has adequately

alleged "adverse action" with regard to his claim that the Class II misconduct was retaliatory.

Plaintiff also alleges actions by Defendants that might be harassment and the

harassment, in turn, might rise to the level of adverse action.  "[T]he harassment necessary to rise

to a level sufficient to deter an individual is 'not extreme' . . . [h]owever, although it is a low

standard, the plaintiff must still establish some relatively strong action."  *Perkins v. Twp. of*

*Clayton*, 411 F. App'x 810, 814 (6th Cir. 2011).  Plaintiff's suggestion that the harassing words of

any of the Defendants might rise to the level of "strong action" lacks merit.  "[P]risoners might

have to endure more than public employees, who in turn might have to endure more than the

average citizen."  *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010).  The

statements by Defendants upon which Plaintiff relies, (Compl., ECF No. 1, PageID.4–6) (Davis's

statements, ¶ 1, Borgen's statement, ¶ 2, Hoover's statement ¶ 3, Jurva's statement ¶ 8, and

Whealton's statement ¶ 11), are generally innocuous and, at their worst, vaguely threatening.  In

*Smith v. Craven*, 61 F. App'x 159 (6th Cir. 2003), the court concluded that verbal harassment

would not deter a prisoner of ordinary firmness from engaging in protect conduct because "an

inmate has no right to be free of verbal abuse . . . and minor threats do not rise to the level of a

constitutional violation."  *Id.* at 162.[4]

---

[4] *See also Hardy v. Adams*, No. 16-2055, 2018 WL 3559190, at *3 (6th Cir. Apr. 13, 2018) ("The alleged threat by
Adams that she would make Hardy's life 'hell' is simply too vague to pass this threshold."); *Shisler v. Golladay*, No.
2:19-cv-80, 2019 WL 2590693, at *4 (W.D. Mich. June 25, 2019) (Golladay's threat that the ticket would be the least
of the plaintiff's worries was "simply too vague" to support a First Amendment retaliation claim); *Dahlstrom v. Butler*,
No. 2:18-cv-101, 2019 WL 91999, at *11 (W.D. Mich. Jan. 3, 2019) ("Krause's threat[--to 'get' a prisoner who files
a grievance on Krause and 'steps out of line'--] is too vague and non-specific to deter a person of ordinary firmness
from engaging in protected conduct."); *Yates v. Rogers*, No. 2:18-cv-180, 2018 WL 6629366, at *7 (W.D. Mich. Dec.
19, 2018) ("Defendant's vague threat to 'get' Plaintiff does not carry the same seriousness . . . ."); *Johnson v. Govern*,
No. 2:17-cv-125, 2018 WL 6321548, at *2 (W.D. Mich. Dec. 4, 2018) ("Govern's alleged threat to 'put a case' on

Finally, Plaintiff might argue that Hoover's second shakedown[5] is "adverse action." Although a search might have aggravating features that might render it "adverse action"—such as confiscation of papers or property—a single search "would not deter a person of 'ordinary firmness' from pursuing constitutional grievances." *Williams v. Stevenson, P.C.*, No. 20-1121, 2020 WL 8512263, at \*2 (6th Cir. Sept. 30, 2020). "A single shakedown unaccompanied by excessive use of force, verbal threats, a pattern of previous questionable shakedowns or other such factors, would not meet the adverse action standard." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503–04 (6th Cir. 2011). Accordingly, the Court concludes that Hoover's second shakedown is not adverse action.

### 3. Retaliatory motive

Finally, Plaintiff must allege that the adverse action was motivated by the protected conduct. That is not difficult with regard to the only adverse action that Plaintiff has sufficiently alleged. The misconduct report and the misconduct determination were plainly motivated by Plaintiff's filing of the administrative grievance. Accordingly, the Court concludes that Plaintiff has sufficiently stated a First Amendment retaliation claim against Defendant Hamel for writing the Class II misconduct report against Plaintiff for interference with the administration of rules for filing grievances and Defendant Whealton, who after conducting the misconduct hearing, imposed sanctions of 30 days loss of privileges for Plaintiff's filing of an administrative grievance.

### E. Conspiracy

Plaintiff alleges that Defendants Hoover, Davis, and Borgen "engineer[ed] a complete conspiracy to [in] concert[] retaliate against Plaintiff for exercise of 1st amendment

---

Johnson . . . was too vague to constitute adverse action."); *Hunter v. Palmer*, No. 1:17-cv-109, 2017 WL 1276762, at \*11 (W.D. Mich. Apr. 6, 2017) ("Defendant DeMaeyer told Plaintiff that complaining would get him into a lot of trouble . . . . Such a vague threat of unspecified harm falls short of adverse action.").

[5] Because Hoover's first shakedown preceded the grievance, it could not have been a retaliatory adverse action.

[rights]." (Compl., ECF No. 1, PageID.7.)  A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's one sentence allegation of conspiracy is conclusory and speculative. Plaintiff has provided no allegations establishing a link between the alleged conspirators or any agreement between them.  He relies entirely on a highly attenuated inference from the mere fact that he encountered and had been subjected to objectionable treatment by these Defendants over a two-day period.  As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.  Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680.  In light of the far more likely possibility that the various incidents were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

**III.    Temporary restraining order**

Plaintiff asks the Court to enter a temporary restraining order and preliminary injunction in his favor.  (ECF No. 8).  He notes that he has three witnesses who have signed sworn affidavits in support of his claims.  He asks the Court to enjoin any transfer of those witnesses or "witness tampering," as well as "further retaliation.'  (*Id*., PageID.30.)

Preliminary injunctions are "one of the most drastic tools in the arsenal of judicial remedies."  *Bonnell v. Lorenzo*, 241 F.3d 800, 808 (6th Cir. 2001) (quoting *Hanson Trust PLC v. ML SCM Acquisition Inc.*, 781 F.2d 264, 273 (2d Cir. 1986)).  The issuance of preliminary injunctive relief is committed to the discretion of the district court.  *See Ne. Ohio Coal. v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006); *Nader v. Blackwell*, 230 F.3d 833, 834 (6th Cir. 2000).  In exercising that discretion, a court must consider whether plaintiff has established the following elements: (1) a strong or substantial likelihood of success on the merits; (2) the likelihood of irreparable injury if the preliminary injunction does not issue; (3) the absence of harm to other parties; and (4) the protection of the public interest by issuance of the injunction.  *Nader*, 230 F.3d at 834.  These factors are not prerequisites to the grant or denial of injunctive relief, but factors that must be "carefully balanced" by the district court in exercising its equitable powers.  *Frisch's Rest., Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *see also S. Galzer's Distribs. of Ohio, LLC v. Great Lakes Brewing Co*., 860 F.3d 844, 849 (6th Cir. 2017) ("[T]hese are factors to be balanced, not prerequisites to be met."); *Nat'l Viatical, Inc. v. Universal Settlements Int'l, Inc.*, 716 F.3d 952, 956 (6th Cir. 2013) (same); *Ne. Ohio Coal.*, 467 F.3d at 1009 (same); *Nader*, 230 F.3d at 834 (same).  "But even the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'"  *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019) (quoting *Friendship Materials, Inc. v. Mich. Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).  Moreover, where a prison inmate seeks an order enjoining state prison officials,

the court is required to proceed with the utmost care and must recognize the unique nature of the prison setting. *See Glover v. Johnson*, 855 F.2d 277, 286 (6th Cir. 1988); *Kendrick v. Bland*, 740 F.2d 432, 438 & n.3 (6th Cir. 1984).  The party seeking injunctive relief bears a heavy burden of establishing that the extraordinary and drastic remedy sought is appropriate under the circumstances. *See Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002); *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978).  Preliminary injunctions are not favored, and a movant is not necessarily entitled to such relief, even if the movant has shown likelihood of success on the merits. *Benisek v. Lamone*, ___ U.S. ___, 138 S. Ct. 1942, 1943–44 (2018).

Under controlling Sixth Circuit authority, Plaintiff's "initial burden" in demonstrating entitlement to preliminary injunctive relief is a showing of a strong or substantial likelihood of success on the merits of his section 1983 action. *NAACP v. Mansfield*, 866 F.2d 162, 167 (6th Cir. 1989).  Plaintiff has alleged sufficient facts to proceed on one retaliation claim out of several claims that he alleged.  But it is not at all clear from Plaintiff's *pro se* complaint or subsequent filings that Plaintiff has a substantial likelihood of success on his remaining retaliation claim.  Although the Court makes no final determination on this issue, it appears, at this preliminary stage, that Plaintiff has not made a substantial showing of a violation of any of his constitutional rights.

Second, the presence of irreparable harm is not evident.  Since filing this motion, the case has proceeded without incident.  There is no evidence that Defendants have engaged in any of the activities from which Plaintiff seeks to restrain them.  Plaintiff has not set forth specific facts showing an immediate, concrete and irreparable harm in the absence of an injunction.

Finally, the interests of identifiable third parties and the public at large weigh against an injunction. Decisions concerning prison security are vested in prison officials, in the absence of a constitutional violation. Any interference by the federal courts in the administration of state prisons is necessarily disruptive. The public welfare therefore militates against the issuance of extraordinary relief in the prison context, absent a sufficient showing of a violation of constitutional rights. *See Glover*, 855 F.2d at 286–87. That showing has not been made here. Accordingly, Plaintiff's motion for a temporary restraining order or preliminary injunctive relief will be denied.

## IV. Appointment of counsel

Plaintiff has requested a court-appointed attorney. (ECF No. 6.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's request for appointment of counsel will be denied.

## V.     *In forma pauperis* status

The filing fee for a civil action is $402.00.[6]  Plaintiff seeks leave to proceed *in forma pauperis*.  However, financial documents that Plaintiff has filed in this action disclose that his average monthly deposits were $290.55 and his spendable balance was $767.92 when he filed his motion.

Because Plaintiff has sufficient funds to pay the filing fee, the Court will deny Plaintiff's motion.  The Court should only grant leave to proceed *in forma pauperis* when it reasonably appears that paying the cost of this filing fee would impose an undue financial hardship.  *Prows v. Kastner*, 842 F.2d 138, 140 (5th Cir. 1988).  It is not unreasonable to require a prisoner to devote a portion of his discretionary funds to defray a fraction of the costs of his litigation.  *See Lumbert v. Ill. Dep't of Corr.*, 827 F.2d 257, 267 (7th Cir. 1987).  Plaintiff has more than sufficient funds to pay his $402.00 filing fee.  Therefore, Plaintiff is not entitled to proceed *in forma pauperis* in this action.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Taskila, Dahl, Borgen, Cummings, Jurva, Hoover, and Davis will be dismissed for failure to state a claim, under 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court will also dismiss, for failure to state a claim, all of the claims against remaining Defendants Hamel and Whealton, except for Plaintiff's retaliation claim based on Hamel's Class II misconduct report and Whealton's imposition of sanctions based on that misconduct.

---

[6] The filing fee for a civil action is $350.00.  28 U.S.C. § 1914(a).  The Clerk is also directed to collect a miscellaneous administrative fee of $52.00.   28 U.S.C. § 1914(b); https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule.  The miscellaneous administrative fee, however, "does not apply to applications for a writ of habeas corpus or to persons granted *in forma pauperis* status under 28 U.S.C. § 1915." https://www.uscourts.gov/services-forms/fees/district-court-miscellaneous-fee-schedule

The Court will deny Plaintiff's motions for temporary restraining order (ECF No. 8), for appointment of counsel (ECF No. 6), and for leave to proceed *in forma pauperis* (ECF Nos. 4, 7).

An order consistent with this opinion will be entered.

Dated:   February 16, 2022                    /s/ *Maarten Vermaat*
                                              Maarten Vermaat
                                              United States Magistrate Judge